

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00304-CR

**SAMMY BOLT,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 13th District Court
### Navarro County, Texas
### Trial Court No. 33413-CR

## MEMORANDUM OPINION

Sammy Bolt appeals from his conviction for possession of a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (West 2010). Bolt complains that the trial court erred by denying his motion to suppress evidence and in the admission of evidence. Because we find no reversible error, we affirm the judgment of the trial court.

*Motion to Suppress*

In his first issue, Bolt complains that the trial court erred by denying his motion to suppress evidence that was found during a traffic stop because there was no reasonable suspicion to detain him beyond the time required to effectuate the traffic stop. Bolt does not challenge the reasonable suspicion for the initial traffic stop, which was for a defective headlamp. However, Bolt contends that there was an unreasonable detention until a drug sniffing dog arrived at the scene and alerted to the presence of drugs in his vehicle.

*Standard of Review*

To conduct a traffic stop in compliance with the Fourth Amendment, an officer must have "reasonable suspicion." *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011). Reasonable suspicion exists "when an officer is aware of 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Id*. The reasonable suspicion standard is wholly objective; the subjective intent of the officer conducting the investigation is irrelevant. *Id*. Whether or not the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to *de novo* review. *State v. Mendoza*, 365 S.W.3d 666, 669-70 (Tex. Crim. App. 2012) (*quoting Ornelas v. United States*, 517 U.S. 690, 696, 699, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996)).

A detention based on reasonable suspicion must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). Once an officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted only if there is reasonable suspicion to believe that the person is violating the law beyond the initial purpose of the traffic stop. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The length of a detention may render a traffic stop unreasonable; however, there is no rigid, bright-line time limitation. *United States v. Sharpe*, 470 U.S. 675, 685, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985); *Love v. State*, 252 S.W.3d 684, 687 (Tex. App.—Texarkana 2008, pet. ref'd); *Belcher v. State*, 244 S.W.3d 531, 539 (Tex. App.—Fort Worth 2007, no pet.). Instead, common sense and ordinary human experience must govern over rigid criteria. *Sharpe*, 470 U.S. at 685; *Love*, 252 S.W.3d at 687; *Belcher*, 244 S.W.3d at 539.

An officer making a traffic stop is not required to investigate the situation in a particular order. *Kothe v. State*, 152 S.W.3d 54, 65 (Tex. Crim. App. 2004). The officer's action is unreasonable under the circumstances only if the investigation "unduly prolongs" the detention. *Kothe*, 152 S.W.3d at 65. The reasonableness of the duration of a detention depends on whether the police diligently pursued a means of investigation that was likely to confirm or dispel any suspicions quickly, during which time it was necessary to detain the defendant. *Sharpe*, 470 U.S. at 686; *Love*, 252 S.W.3d at 687;

*Belcher*, 244 S.W.3d at 539. Unquestionably, an officer may check a driver's criminal history so long as doing so does not unduly prolong the stop. *Hamal v. State*, 390 S.W.3d 302, 307-08 (Tex. Crim. App. 2012).

Additionally, conduct that may be innocent when viewed in isolation may give rise to reasonable suspicion when viewed in the light of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Nervousness alone is not sufficient to establish reasonable suspicion for an investigative detention. *St. George v. State*, 237 S.W.3d 720, 726 (Tex. Crim. App. 2007). However, it can be relevant when considered in combination with other factors. *Neal v. State*, 256 S.W.3d 264, 281-82 (Tex. Crim. App. 2008). Likewise, a prior criminal record does not by itself establish reasonable suspicion but is a factor that may be considered. *Hamal*, 390 S.W.3d at 308. Deception regarding one's own criminal record has also been recognized as a factor that can contribute to reasonable suspicion. *Id*.

There is no dispute that the initial traffic stop was proper. Bolt's complaint is that the time between the initial stop and the arrival of a drug sniffing dog was not supported by reasonable suspicion. Bolt further argues that the officer that detained him did not act diligently to verify the validity of warrants discovered during a warrant check, and therefore the warrants were an insufficient basis on which to prolong the detention.

*Facts*

Bolt was driving a semi-truck and trailer on Interstate 45 and was stopped by Trooper Williamson because of a defective head lamp. Williamson approached the truck on the passenger side and asked Bolt for his driver's license and for him to get out of the truck. Bolt did not exit immediately and had to be asked more than once for his driver's license before he produced it for Williamson. Bolt was wearing latex gloves on his hands, which Bolt explained was because he had been working on his truck while in Houston. Bolt was stopped in Navarro County and was at least two and a half to three hours' drive from Houston at that time.

Williamson then contacted dispatch from his in-car computer and checked on the status of Bolt's driver's license and for any outstanding warrants. Williamson was advised that Bolt had two outstanding warrants from Euless and Blue Mound. The criminal history check showed that Bolt also had several prior drug arrests, one of which was for felony possession of a controlled substance that had occurred less than five months' prior in New York.

Williamson approached Bolt again and asked him about the warrants, and Bolt was unsure if he had taken care of one of them or not. Williamson also asked Bolt about any prior arrests and Bolt did not disclose the recent arrest but stated that he had been in trouble for marijuana "in his younger years." Bolt also stated that all of his prior arrests had taken place in Texas. When confronted about the recent arrest in New York,

Bolt gave a lengthy description of a traffic accident but did not disclose the arrest for drug possession. Williamson asked Bolt if he had any drugs in the truck and when asked specifically about methamphetamines, Bolt hesitated and looked at his truck and back before answering that he did not have any. Williamson asked Bolt for permission to search his truck which was refused. This request and refusal took place approximately 17 minutes after Williamson initiated the traffic stop.

Williamson called Trooper Etzler to bring his drug-sniffing dog to the scene approximately twenty minutes after the initiation of the traffic stop. Bolt was handcuffed for officer safety and placed in the front seat of Williamson's patrol car. Etzler and the dog arrived approximately 32 minutes after Williamson's call. Etzler's arrival was approximately 50 minutes after the initiation of the traffic stop. Etzler was off-duty and was approximately 24 to 26 miles from the scene at the time he was called by Williamson.

After a delay to remove Bolt's dog from the truck, the drug sniffing dog alerted to the presence of narcotics in the vehicle. Williamson and Etzler then searched the truck and found what was determined to be marijuana and methamphetamine, and Bolt was arrested for possession of the controlled substances. Both of the warrants were confirmed to be valid after Bolt was taken to jail.

Based on the totality of the circumstances, we conclude that Trooper Williamson possessed specific, articulable facts that, when combined with rational inferences from

those facts, would lead him to reasonably conclude that Bolt was engaging in criminal activity and that, therefore, Williamson had reasonable suspicion to detain him. We further find that the length of time between when Williamson discovered the existence of the warrants and the arrival of Etzler and the drug dog was not unreasonable and during that time Williamson questioned Bolt about his knowledge of the status of the warrants and his criminal history. It was less than an hour from the time of the initial stop until Etzler and the drug dog arrived at the scene. The trial court did not err by denying Bolt's motion to suppress evidence. We overrule issue one.

*Admission of Evidence*

Bolt complains that the trial court abused its discretion in admitting evidence that marijuana was found in the vehicle where the methamphetamine was found pursuant to rules 404(b) and 403 of the rules of evidence. During the testimony of Trooper Williamson during the jury trial, the State sought to have the video of the traffic stop admitted into evidence. Bolt objected to the admission of the video on multiple grounds, and the trial court conducted a hearing to determine whether the video would be admitted into evidence. The video was over two hours long so the trial court reserved a ruling on the issue that day. Williamson continued testifying and stated that he found what he believed to be marijuana and a black pipe on the overhead shelf above the driver's seat. Bolt did not object to this testimony.

The next day, the trial court conducted a hearing outside of the presence of the jury on Bolt's objections to excerpts of the video made during the traffic stop and ruled that the evidence regarding the marijuana was admissible. Etzler then testified about finding the marijuana and that Bolt had stated that he had smoked marijuana a few hours before the traffic stop without objection by Bolt, and then Bolt asked for but was denied a running objection to Bolt's statement regarding having smoked marijuana recently.

To preserve a complaint about admitting evidence, a party must timely make a proper objection and get a ruling on that objection. TEX. R. APP. P. 33.1; *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (*citing Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)). However, "[a]n error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Id*. *See also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). "This rule applies whether the other evidence was introduced by the defendant or the State." *Leday*, 983 S.W.2d at 718. Because Williamson's testimony that marijuana was found was made prior to the hearing on the admissibility of the video and was not objected to at that time, any error in the admission of the video relating to the discovery of the marijuana was cured. We overrule issue two.

*Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice


Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed October 31, 2013
Do not publish
[CR25]